IN THE DISTRICT COURT OF GRANT COUNTY, KANSAS **FILED**

KENYA D. RUDZIK and CHANCE R. RUDZIK, )
     )
and )
     )
TLC TRUCKING, LLC, )
     )
and )
     )
REYMUNDO ESTRADA GARCIA, )
     )
         Plaintiffs, )
     )
v. )
     )
STAR INSURANCE COMPANY, )
Serve: )
Commissioner of Insurance )
Attn. Legal Division )
Kansas Insurance Department )
420 SW 9th Street )
Topeka, Kansas 66612 )
     )
and )
     )
CUSTARD INSURANCE ADJUSTERS, INC. )
Serve: )
National Registered Agents, Inc. of KS )
112 Southwest 7th Street, Suite 3C )
Topeka, Kansas 66603 )
     )
and )
     )
DONALD SEWARD, )
Serve at Work: )
1405 A South Hydraulic )
Wichita, Kansas 67211 )
     )
         Defendants. )

2014 DEC -1  PM 2: 56

GRANT COUNTY KANSAS
CLERK OF THE DISTRICT CT

Case No. 14-CV-39

Division _____

## PETITION



EXHIBIT
A

Plaintiffs Kenya and Chance Rudzik, TLC Trucking, LLC, and Reymundo Estrada Garcia, for their cause of action against the defendants, allege and state as follows:

**Parties**

1.      Plaintiffs Kenya and Chance Rudzik (collectively "Rudziks"), husband and wife, are citizens and residents of Grant County, Kansas.

2.      Plaintiff TLC Trucking, LLC ("TLC"), is a Kansas limited liability company with its principal place of business in Garden City, Kansas.

3.      Plaintiff Reymundo Estrada Garcia ("Estrada") is a resident of the State of Kansas.

4.      TLC and Estrada will be referred to collectively as "Insureds."

5.      Defendant Star Insurance Company ("Insurer") is a Michigan corporation licensed and authorized with the Kansas Commissioner of Insurance to transact business in the state of Kansas.  Insurer is a wholly owned subsidiary of Meadowbrook Insurance Group, Inc. Pursuant to K.S.A. 40-218, Insurer may be served via the Commissioner of Insurance at: Commissioner of Insurance, Attn. Legal Division, Kansas Insurance Department, 420 SW 9th Street, Topeka, Kansas 66612.

6.      Defendant Custard Insurance Adjusters, Inc. ("Custard"), is a foreign for profit corporation registered to do business in the State of Kansas.  Custard may be served via its registered agent, National Registered Agents, Inc. of KS, 112 Southwest 7th Street, Suite 3C, Topeka, Kansas 66603.

7.      Defendant Donald Seward ("Seward") is a citizen and resident of the State of Kansas.  Seward may be served at his place of business located at 1405 A South Hydraulic, Wichita, Kansas 67211.

2

## Jurisdiction and Venue

8.    This Court has subject matter jurisdiction over this action pursuant to the Kansas Constitution, Art. III, §§ 1 & 3.

9.    Venue is proper in this judicial district pursuant to K.S.A. §§40-218, 60-603 and 60-604, in that plaintiffs Chance and Kenya Rudzik reside in Grant County, the cause of action against Defendants arose in Grant County upon entry of a Judgment against Insureds as described herein, and Defendants are transacting business in Grant County.

## General Allegations

10.    Insurer issued a commercial automobile liability insurance policy, No. CA0585187, to TLC, which was in effect and valid for the time period from December 10, 2011 through December 10, 2012.   That insurance policy had a per accident coverage limit of $1,000,000.

11.    On November 28, 2012, Kenya was rear-ended by a TLC tractor/trailer being driven by Estrada as Kenya was traveling northbound on US Highway 83 in Haskell County, Kansas.

12.    As a direct and proximate result of the collision, Kenya suffered catastrophic injuries including a spinal cord injury with paraplegia.

13.    The collision occurred at approximately 9:30 a.m., and Insurer received notice of the collision from Insureds an hour later at 10:39 am.

14.    Insurer's employees and/or agents assigned to the Rudzik claim were Katrena Scott ("Scott"), Claim Adjuster, Glen Arios ("Arios"), Claim Adjuster, Walter Erker ("Erker"), Claim Manager, and Judith McKinney ("McKinney"), Claim Supervisor.   Susan Curtis ("Curtis") was assigned to the file by Insurer after suit was filed in the underlying litigation.

3

15.   At all pertinent times, Scott, Erker, McKinney, Arios and Curtis were acting within the course and scope of their respective employment or agency with Insurer, and Insurer is vicariously liable for their negligent acts and omissions and bad faith.

16.   Custard claims to be one of the largest loss adjusting companies in the United States, providing claim adjusting, third-party administration and risk management services. Custard holds itself out as having experience and expertise in all areas of liability claims. Moreover, Custard and Seward hold themselves out as experts on investigating, adjusting and advising insurers on losses and insurance claims in the State of Kansas.

17.   Custard was hired and authorized by Insurer to investigate, adjust and advise Insurer on the claims and losses arising from the collision, including the injury sustained by Kenya Rudzik, in exchange of payment. Seward was the Custard employee primarily responsible for that task.

18.   Custard and Seward agreed to perform the services for which they were hired by Insurer.

19.   Insurer entered into a contract with Custard and Seward to, among other things, investigate, adjust and advise Insurer on the claims and losses arising from the collision, including the injuries suffered by Kenya Rudzik.

20.   Insureds were beneficiaries of the contract between Custard/Seward and the Insurer.

21.   At the time Custard and Seward undertook to provide the services at issue, they recognized or should have recognized those services as necessary to protect the Insureds from exposure to an excess judgment and other financial damage.

4

22.     At the time Custard and Seward undertook to provide the services at issue, their failure to exercise reasonable care in providing those services increased the risk of harm/damage to the Insureds.

23.     At the time Custard and Seward undertook to provide the services at issue, they were undertaking to perform part of the duty owed by Insurer to Insureds.

24.     At the time Custard and Seward undertook to provide the services at issue, they were aware Insureds and Insurer were relying on them to perform those services, and Insureds could suffer harm/damage if they failed to perform those services properly.

25.     The day after the collision, November 29, 2012, Scott received multiple emails from the insurance agent for Insureds providing pictures from the collision scene, including at least one picture of Kenya's catastrophically destroyed vehicle, and stating "I am really hoping that Kenya is going to be ok."

26.     On November 30, 2012, McKinney made an entry into Insurer's claim file stating "3 vehicle incident involving major injuries to female."

27.     On December 6, 2012, Custard obtained a recorded statement from the driver of a separate tractor-trailer involved in the collision, Jesus Perez, who stated, in pertinent part, that "the TLC driver was going too fast to slow down quick enough and rear-ended the vehicle in front of him" and "the TLC driver was probably not paying attention at the time of the accident."

28.     On December 9, 2012, McKinney made an entry in the Insurer's claim file expressing concern that the $1,000,000 coverage limit is inadequate.

29.     On December 13, 2012, Seward sent his "First Report" to Scott providing copies of the recorded statement summary of Jesus Perez and the Kansas Highway Patrol preliminary crash log report. Seward's report stated:

5

    a.  "Insured rear-ended the Rudzik vehicle";

    b.  Kenya "received very severe injuries and will quite probably need supplemental surgical care. ... [C]laimant Rudzik injuries may be severe enough that she may never walk again";

    c.  "We did locate in the insured tractor an affidavit for probable cause executed by district judge in Haskell County. This affidavit identifies that the crimes of reckless driving, following too closely, and breaking basic rules governing speed were committed"; and

    d.  "According to Kansas Highway Patrol Accident Records, the Kansas Highway Patrol Report does not attribute any contributing circumstances to claimant driver Kenya Rudzik. It does not appear that claimant driver #2 Jesus Perez-Alarcon contributed to this accident."

30.    That same day, on December 13, 2012, Erker made the following entries into the Rudzik claim file:

    a.  "Liability is adverse to the ID";

    b.  "Open BI ... for the woman in the car (paralyzed?)";

    c.  "ID was not injured, will probably be charged, has been terminated"; and

    d.  "The woman BI was very seriously injured."

31.    On December 29, 2012, Scott made the following entries into the Rudzik claim file:

    a.  "Kenya sustained severe injuries. She is currently out of state at an unknown hospital capable of tending to her injuries. She will require several surgeries and it is not likely that she will walk again"; and

       b.  "Send National Carriers, and Farm Bureau letters advising them of a possible limits issue."

32.     On January 7, 2013, Seward sent his "Second Report" to Scott, enclosing a copy of the Kansas Highway Patrol Report. The Second Report stated:

       a.  The bulb in Kenya's left blinker revealed "Hot Shock", which confirms her turn signal was activated at the time of the collision; and

       b.  "It was determined that the insured driver was communicating on a CB radio at the time the accident occurred. Though there were no citations issued, the investigating officer's opinions of contributing circumstances were driver #1, the insured driver following too closely, being distracted by other electronic devices and traveling too fast for conditions. There were no contributing circumstances attributed to the claimant driver Rudzik or claimant driver Perez-Alarcon."

33.     On January 11, 2013, counsel for the Rudziks sent a letter to Insurer confirming representation, enclosing a copy of the Kansas Motor Vehicle Accident Report, requesting the liability limits for the applicable insurance policy, requesting a copy of the declarations page for each applicable policy, requesting a certified copy of all applicable insurance policies, and asking Insurer to advise of any excess or umbrella policies applicable to the collision.

34.     As of January 11, 2013, Insurer knew the subject liability insurance policy had limits of $1,000,000, and Insurer knew or should have known that Insureds had no excess or umbrella coverage.

35.     On January 16, 2013, Chance Rudzik sent the following email to Scott: "Katrina, it is my understanding that you and your company have excepted [sic] liability on my wife's

accident. I have some questions. Kenya was in ICU for a week at Via Christi in Wichita and has been at Craig rehabilitation hospital for 45 days now and will be there for at least another month. Because of the accident we are having an unknown amount of medical expense. We must remodel our house to accommodate her now being handicapped. Because she will no longer be able to work we have lost that income and there are numerous other expenses due to this accident including pain and suffering. We have heard adjusters talk about umbrellas, re-insurance and liability. What coverages are available? And what do I do from here?"

36.     On January 16, 2013, Scott and the Rudziks' counsel spoke by telephone. During that conversation,

        a.   Counsel confirmed to Scott that Kenya's injuries were catastrophic, that Kenya suffered a spinal cord injury and was paralyzed below the waist;

        b.   Counsel for the Rudziks asked for the applicable insurance policy limits and asked whether there was excess or umbrella coverage;

        c.   Scott refused to disclose the available coverages; and

        d.   Counsel reiterated the need for insurance coverage information and documentation, and explained he was unable to properly advise his clients or evaluate the case without information and documentation of the available insurance coverages.

37.     Following their conversation on January 16, 2013, the Rudziks' counsel sent an email to Scott stating: "As discussed and as mentioned in my letter of January 11, 2013, it is very important that we receive a statement of the available coverage. We will also need documentation verifying the coverage. Because this is a catastrophic injury case, we also need to know about excess or umbrella coverage."

38.     On or about January 17, 2013, and at all relevant times thereafter, Insurer knew the following based on information and documentation in the Rudzik claim file:

   a.   Kenya was paralyzed;

   b.   Kenya was 42-years-old and married with two children;

   c.   Kenya was working full-time as a postal carrier making $50,000/year;

   d.   Kenya would be unable to return to work as a postal carrier;

   e.   Kenya's medical bills through December 17, 2012, totaled approximately $289,000, and she had remained in a rehabilitation hospital since that date so Insurer knew her medical bills were far in excess of $289,000; and

   f.   The liability/fault of Insureds was clear, and there was no basis for comparative fault to Kenya, Perez or any other person/entity.

39.     On or about January 17, 2013, and at all relevant times thereafter, Insurer knew or should have known that the value of the Rudziks' claim far exceeded $1 Million, yet Insurer failed and, in fact, refused to provide the Rudziks with necessary insurance information and documentation, failed to make any effort to initiate settlement discussions and failed to make a settlement offer.  Moreover, Insurer knew or should have known that its failure to take action to protect Insureds as described herein would expose Insureds to a significant risk of an excess judgment along with other harm/damages.

40.     On or about January 17, 2013, and at all relevant times thereafter, Custard and Seward knew or should have known that the value of the Rudziks' claim far exceeded $1 Million, yet Custard and Seward failed to provide the Rudziks with necessary insurance information and documentation, failed to make any effort to initiate settlement discussions and failed to make a settlement offer.   Moreover, Custard and Seward failed to advise Insurer to

provide the Rudziks with the necessary coverage information and documentation, failed to advise Insurer to initiate settlement discussions and failed to advise Insurer to offer the $1 Million policy limits. Moreover, Custard and Seward knew or should have known that their failure to take action – or advise Insurer to take action – as described herein would expose Insureds to a significant risk of an excess judgment along with other harm/damages.

41.     On February 5, 2013, Seward sent a letter to Kenya informing her of "a possible limits issue based on the extent of the loss involved in the" collision.

42.     On February 6, 2013, counsel for the Rudziks faxed a letter to Seward enclosing the aforementioned January 11, 2013 letter to Scott, and stating the following: "I again request coverage information as first requested in my letter of 1/11/13 and requested again of Ms. Scott verbally and in writing on 1/16/13. At that time, I informed Ms. Scott that Kenya Rudzik suffered catastrophic injuries including a spinal cord injury and resulting paralysis. I told Ms. Scott that I could not properly advise my clients or evaluate the case without knowing the available coverage. Almost four weeks have passed since my initial request, and I still have not received any coverage information nor have I been contacted in any manner since my brief phone conversation and email exchange with Ms. Scott on January 16."

43.     Upon receipt of counsel's letter, Seward failed to provide the necessary coverage information and documentation to the Rudziks and failed to advise Insurer to do so.

44.     On February 13, 2013, Arios made the following entries into the Rudzik claim file:

      a.  "Our insured rear ended claimant Kenya Rudzik who was stopped, apparently with turn signal on, waiting for opposing traffic clear to make a left turn";

     b.   "Claimant Rudzik survived but was apparently severely injured.  Indications are she is paralyzed from the waist down "; and

     c.   "Liability appears to be adverse to our insured."

45.     On February 19, 2013, McKinney made the following entry into the Rudzik claim file: "The medical bills note the following:  MVA FX-C2, T11-T12, T Clavicle Paralysis Bottom T7-T12."

46.     On February 20, 2013, Arios made the following entry into the Rudzik claim file: "Spoke with Troy (owner of TLC) who said he does not have any excess coverage.  Discussed damages and potential damage in excess of the policy.  Asked if he would have a problem in releasing policy limit info and he said no."

47.     Despite having permission from the Insureds and despite multiple requests, Arios failed and refused to disclose necessary insurance coverage information and documentation to the Rudziks.

48.     On February 20, 2013, Arios and the Rudziks' counsel spoke by telephone. During the conversation,

     a.   The Rudziks' counsel repeated to Arios that Kenya was paralyzed ;

     b.   The Rudziks' counsel told Arios that Kenya had just been released from Craig Rehabilitation Hospital in Denver, Colorado, and that Kenya had been hospitalized or in a rehabilitation facility continuously since the collision;

     c.   The Rudziks' counsel again requested insurance coverage information and documentation.  Arios replied, "you can request that information as part of the discovery process and we will have to give it to you, but I am not authorized to release that information now";

11

    d.   Arios stated that TLC had a "large commercial policy" but refused to disclose the coverage limits;

    e.   Arios stated the Rudziks' claim "breached" the limits of the policy, but refused to tell Rudziks' counsel whether there was excess or umbrella coverage; and

    f.   Counsel again conveyed the difficulty of advising the Rudziks without coverage information and documentation.

49.    On March 11, 2013, Arios sent letters to Insureds providing: "We want to advise you that the damages arising out of this accident may exceed the limits of coverage under your policy. We continue our efforts to resolve all claims arising from the accident within your coverage but if we are unable to, we want you to know that you may be personally exposed to those claims that we cannot finalize. If you have insurance coverage that provides you with an additional layer of protection, we recommend that you notify the insurer providing the coverage, immediately." It also informs Insureds that "there is a possibility that you may be served with legal papers."

50.    On April 2, 2013, Insurer updated the ISO claim report to reflect "PARALYSIS" as Kenya's injury.

51.    On or about April 2, 2013, Insurer ordered a complete background check on Kenya, to include "asset, criminal, property and DMV checks

52.    On April 26, 2013, at the direction of Arios, Seward went to Ulysses, Kansas, to investigate whether the Rudzik home had been modified to include a wheelchair ramp and to "discreetly inquire" of neighbors whether Kenya was paralyzed.

53.     On April 29, 2013, Seward sent his "Seventh Report" to Arios, enclosing photos of the Rudzik home and wheelchair ramp, and informing him that: "We traveled to Ulysses, Kansas and documented a wheel chair ramp, which had been constructed. We then conducted a neighborhood canvas and we were informed that the claimant is, in fact, paralyzed. We understand that as a result of November 28, 2012, Kenya Rudzik's 11th and 12th vertebra were crushed and had to be surgically fused. The claimant is, in fact, paralyzed from the waist down and is wheel chair bound."

54.     During the week of May 13, 2013, the Rudziks' counsel discussed their lawsuit against Insureds with an associate at his firm. Counsel planned to mail the Petition for filing in Grant County by the end of the week, Friday, May 17, 2013.

55.     On the afternoon of May 16, 2013, Scott called the Rudziks' counsel. Scott advised for the first time that the liability policy limit was $1 Million and informed the Rudziks' counsel – again for the first time – that there was no excess or umbrella coverage. This is the same information the Rudziks requested over four months ago, and that Insureds authorized Insurer to disclose almost three months ago.

56.     No documentation was offered or provided confirming Scott's statements regarding the liability coverage limit or the alleged lack of excess or umbrella coverage.

57.     During the May 16, 2013 conversation, Scott did not initiate settlement discussions and did not make a settlement offer.

58.     During the May 16, 2013 conversation, Scott asked the Rudziks' counsel for a medical record confirming Kenya was paralyzed.

59.     The Rudziks' counsel mailed the Petition to Grant County for filing on Friday, May 17, 2013, as planned.

60.     On May 21, 2013, the Petition was received and filed, Case No. 13-CV-11, in the District Court of Grant County, Kansas, against TLC and Estrada ("lawsuit").

61.     That same day, May 21, 2013, the Rudziks' counsel provided the discharge summaries from Via Christi Hospital and Craig Hospital to Scott via email, both of which further confirmed Kenya's spinal cord injury and paralysis. Scott responded, "Thank you." Scott did not request additional medical documentation, a medical release or complain the discharge summaries were inadequate.

62.     On June 5, 2013, Scott made the following entry into the Rudzik claim file: "Kenya Rudzik was released with a diagnosis of ASIA - A complete paraplegia spinal cord injury where no motor or sensory function is preserved."

63.     On July 22, 2013, the lawsuit was served on Insureds.

64.     After receiving the lawsuit, Scott called the Rudziks' counsel and asked if the Rudziks intended to make a settlement demand. Scott did not make a settlement offer.

65.     The Rudziks' counsel declined to make a settlement demand and informed Scott it was the Rudziks' position that Defendants had breached their contract with Insureds and acted negligently and/or in bad faith.

66.     As of July 22, 2013, Insurer had still failed to provide documentation of the available coverages.

67.     On October 23, 2013, the Rudziks' counsel received a telephone call from attorney David Cooper ("Cooper") with Fisher, Patterson, Sayler & Smith, LLP, during which Cooper tendered the Insurer's policy limit of $1,000,000 for the first time – almost 11 months after the collision that rendered Kenya paraplegic. The Rudziks declined that offer.

14

68.     Due to Insurer's breach of contract, bad faith and negligent delay in providing necessary insurance coverage information and documentation, initiating settlement discussions and tendering the applicable policy limit, the Rudziks incurred unnecessary litigation expenses, costs and attorneys' fees.

69.     Due to Seward and Custard's failure to properly investigate and adjust the Rudziks' claim, and their failure to properly advise Insurer to disclose necessary insurance coverage information and documentation, initiate settlement discussions with the Rudziks and offer the policy limits, the Rudziks incurred unnecessary litigation expenses, costs and attorneys' fees.

70.     While the Rudziks' lawsuit against Insureds was pending, those parties entered into a settlement agreement as authorized by *Glenn v. Fleming*, 247 Kan. 296, 799 P.2d 79 (1990), and Insureds assigned to the Rudziks their breach of contract claims against Insurer arising out of Insurer's bad faith and negligence.

71.     On September 29, 2014, the Honorable Judge Bradley E. Ambrosier, sitting in the District Court of Grant County, Kansas, held a contested bench trial on the Rudziks' claims against Insureds.

72.     Insurer had advance notice of the contested bench trial, but did not appear and made no effort to intervene.

73.     Upon information and belief, Insurer and their "bad faith" counsel were directing Insureds in their defense at trial in an attempt to minimize the amount of the judgment in favor of the Rudziks. Insureds presented evidence, including an expert on life care planning, life expectancy and vocational issues, cross-examined the Rudziks' witnesses and argued the Rudziks' damages were limited to $3,672,059.40 (three-and-a-half times the policy limits).

15

74.    On or about October 23, 2014, the Court issued its *Findings of Fact, Conclusions of Law, and Journal Entry of Judgment* finding Insureds 100% at fault for the collision and awarding the Rudziks damages in the sum of $10,482,974.60, plus interest at the statutory rate and costs allowed by law.

75.    Insurer breached its contract with Insureds and acted negligently and in bad faith in the following respects:

    a.  Failing to timely comply with its duty to initiate settlement negotiations and tender its policy limits when it knew or should have known that the liability of its Insureds was clear and the Rudziks' damages far exceeded the policy limits;

    b.  Failing to timely respond to the Rudziks' requests for necessary insurance coverage information and documentation so that settlement discussions could occur promptly, and with minimal time and expense for the Rudziks and without requiring the Rudziks to file a lawsuit against Insureds;

    c.  Failing to properly conduct a good faith investigation of the Rudziks' claim against Insureds;

    d.  Failing to properly conduct a good faith evaluation of the Rudziks' claim against Insureds;

    e.  Failing to give equal consideration to the best interests of its Insureds, by failing to provide necessary insurance coverage information and documentation, failing to initiate settlement negotiations and failing to tender the policy limits before the Rudziks filed the underlying lawsuit against Insureds;

16

f. Failing to properly consider the amount of financial risk to which its Insureds were exposed by the failure to timely provide necessary insurance coverage information and documentation, initiate settlement discussions and offer the policy limits;

g. Failing to timely take the actions necessary to keep the recovery against the Insureds within the policy limits;

h. Failing to conduct itself with that degree of care which would be used by an ordinarily prudent person in the management of his own business, with no policy limits applicable to the claim; and

i. Other duties arising under Kansas law breached by Insurer based on the evidence discovered as this case proceeds.

76.     Custard and Seward owed and undertook a duty to Insureds to properly investigate and adjust the Rudziks' insurance claim, to act in Insureds' best interest in doing so, and to timely and properly advise the Insurer of the need to provide insurance information and documentation to the Rudziks, to initiate settlement discussions and to offer the policy limits.

77.     Custard and Seward breached their contract with Insurer, breached their duty owed to Insureds, and acted negligently and in bad faith in investigating, adjusting and advising Insurer on the Rudzik claim in the following respects:

a. Failing to advise Insurer of its duty, and the clear need, to disclose the insurance coverage information and documentation requested by the Rudziks, initiate settlement negotiations with the Rudziks and tender the policy limits;

b. Failing to timely respond to the Rudziks' requests for necessary insurance coverage information and documentation so that settlement discussions could

17

occur promptly, and with minimal time and expense for the Rudziks and without requiring the Rudziks to file a lawsuit against Insureds;

c.  Failing to properly investigate and adjust the Rudziks' claim against Insureds;

d.  Failing to conduct a good faith evaluation of the Rudziks' claim against Insureds;

e.  Failing to properly consider the amount of financial risk to which its Insureds were exposed by the failure to timely provide necessary insurance coverage information and documentation, initiate settlement discussions and offer the policy limits;

f.  Failing to timely advise Insurer to take the actions described herein which were necessary to keep the recovery against Insureds within the policy limits;

g.  Failing to conduct themselves with that degree of care which would be used by an ordinarily prudent person in the business of investigating and adjusting insurance claims in Kansas and advising insurers on insurance claims in Kansas; and

h.  Other duties breached arising under Kansas law based on the evidence discovered as this case proceeds.

78.  Filing of the lawsuit against Insureds was the direct consequence of Insurer's breach of contract, acts of negligence and bad faith, and failure to act in the best interest of its Insureds, as well as the breaches of contract, and negligent acts, omissions and undertakings of Custard and Seward referenced above.

79.  Insureds were forced to enter into the *Glenn v. Fleming* agreement with the Rudziks in order to protect their personal assets as a direct consequence of Insurer's breach of

18

contract, acts of negligence and bad faith, and failure to act in the best interest of its Insureds, as well as the breaches of contract, and negligent acts, omissions and undertakings of Custard and Seward referenced above.

80.    Entry of judgment against Insureds in excess of the policy limit, in the amount of $10,482,974.60, was the direct consequence of Insurer's breach of contract, acts of negligence and bad faith, and failure to act in the best interest of its Insureds, as well as the breaches of contract, and negligent acts, omissions and undertakings of Custard and Seward referenced above.

81.    Had Insurer timely provided the necessary insurance information and documentation requested by the Rudziks, timely initiated settlement discussions and timely offered the applicable policy limit, the Rudziks would have settled their claims against Insureds. Insureds would not have been sued, forced to enter into the *Glenn v. Fleming* agreement or had a $10,482,974.60 excess judgment entered against them.

82.    Had Custard and Seward not breached its contract to Insurer, or been negligence in failing to properly investigate, adjust and advise Insurer on the Rudzik claim as described herein, the Rudziks would have settled their claims against Insureds. Insureds would not have been sued, forced to enter into the *Glenn v. Fleming* agreement or had a $10,482,974.60 excess judgment entered against them.

83.    Defendants are liable to pay the $10,482,974.60 judgment awarded to the Rudziks in the lawsuit, plus interest at the statutory rate and costs allowed by law.

84.    As a direct and proximate result of Insurer's breach of contract, acts of negligence and bad faith, and failure to act in the best interest of its Insured, as well as the breaches of contract, and negligent acts, omissions and undertakings of Custard and Seward referenced

above, Insureds TLC and Estrada have sustained damages, including entry of a judgment against them in the amount of $10,482,974.60, damage to their business reputation and good will, and unnecessary fees, expenses and claim payments that Insureds have been required to pay personal funds and assets.

85.   Insurer's failure or refusal to tender its policy limits was without just cause or excuse and, pursuant to K.S.A. 40-256, Insurer is responsible for payment of reasonable attorneys' fees to be recovered and collected as costs.

WHEREFORE, plaintiffs pray for judgment against defendants in the amount of $10,482,974.60, plus reasonable attorneys' fees assessed as costs, interest at the statutory rate on the entire judgment, Court costs, for any and all damages to Insureds, and for such other and further relief as the Court deems just and equitable.

Respectfully submitted,

**SHAMBERG, JOHNSON & BERGMAN,
CHTD.**

By: _____

Scott E. Nutter, KS #20012
David C. DeGreeff, KS #21794
2600 Grand Boulevard, Suite 550
Kansas City, MO 64108
Phone: 816 474-0004
Facsimile: 816-474-0003
Email: snutter@sjblaw.com
Email: ddegreeff@sjblaw.com

**ATTORNEYS FOR KENYA & CHANCE
RUDZIK**

and

**REBEIN, BANGERTER, REBEIN, PA**

By: _____

David J. Rebein, KS #10476
810 Frontview
Dodge City, KS  67801
Phone: 620-227-8126
Facsimile: 620-227-8451
Email: dave@rbr3.com

**ATTORNEY FOR TLC TRUCKING, L.L.C.
AND REYMUNDO ESTRADA GARCIA**

## DEMAND FOR TRIAL BY JURY

Plaintiffs request a trial by jury.

Respectfully submitted,

SHAMBERG, JOHNSON & BERGMAN,
CHTD.

By: _____

Scott E. Nutter, KS #20012
David C. DeGreeff, KS #21794
2600 Grand Boulevard, Suite 550
Kansas City, MO 64108
Phone: 816 474-0004
Facsimile: 816-474-0003
Email: snutter@sjblaw.com
Email: ddegreeff@sjblaw.com

**ATTORNEYS FOR KENYA & CHANCE
RUDZIK**

and

**REBEIN, BANGERTER, REBEIN, PA**

By: _____

David J. Rebein, KS #10476
810 Frontview
Dodge City, KS 67801
Phone: 620-227-8126
Facsimile: 620-227-8451
Email: dave@rbr3.com

**ATTORNEY FOR TLC TRUCKING, L.L.C.
AND REYMUNDO ESTRADA GARCIA**