IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

```
KENYA D. RUDZIK; CHANCE R. RUDZIK;  )
TLC TRUCKING, LLC; and              )
REYMUNDO ESTRADA GARCIA,            )
                                    )
                 Plaintiffs,        )   CIVIL ACTION
                                    )
v.                                  )   No.  14-1421-MLB
                                    )
STAR INSURANCE COMPANY;             )
CUSTARD INSURANCE ADJUSTERS; and    )
DONALD SEWARD,                      )
                                    )
                 Defendants.        )
                                    )
```

**MEMORANDUM AND ORDER**

The following are before the court:

1. Plaintiffs' motion to remand (Doc. 16);
   Star Insurance Co. response (Doc. 19);
   Plaintiffs' reply (Doc. 24);

2. Defendants Custard Ins. Adjusters and Donald
   Seward's motion to dismiss (Docs. 17, 18);
   Plaintiffs' response (Doc. 25);
   Defendants' reply (Doc. 26); and

3. Defendant Star Ins. Co.'s motion to
   consolidate cases (Docs. 7, 8); and
   Plaintiffs' response (Doc. 11).

**I. Background.**

On November 28, 2012, Kenya Rudzik was making a left turn on US Highway 83 in Haskell County, Kansas, when her car was rear-ended by a tractor-trailer driven by TLC Trucking employee Reymundo Estrada Garcia (hereinafter "Estrada"). Rudzik suffered severe injuries, including a spinal cord injury with paraplegia.

At the time of the accident, TLC Trucking had an automobile liability policy in effect with Star Insurance Company. The policy had

a coverage limit of $1,000,000 per accident. Prior to this accident, Star Insurance had contracted with Custard Insurance Adjusters, an independent adjusting company, for services including investigation, adjusting and advising Star with respect to insurance claims. Star sent the Rudzik claim to Custard, and Custard employee Donald Seward was assigned to work on it.

Seward and various Star employees gathered information about the accident over the next several months. During this period, counsel for the Rudziks requested that Seward or Star disclose the policy limits and whether there was any excess coverage, but they refused to do so. On February 20, 2013, a Star employee allegedly told Rudziks' counsel that he could request and receive that information in the discovery process but that Star was not authorized to disclose it. At this time, there was no "discovery process" because there was no lawsuit.

The Rudziks allege that as of February 2013 defendants knew that liability was clear on the part of Estrada, TLC's driver, that Kenya Rudzik's injuries were severe and her damages would likely exceed the policy limits, and that TLC had no excess insurance coverage.

In April 2013, Star sent an email asking Seward to confirm that the Rudziks' home had been remodeled to accommodate Kenya Rudzik's disability, as the Rudziks had reported, and to make discrete inquiries in Rudzik's home town to confirm the extent of her injuries. Seward responded that they would do so and subsequently confirmed both the remodel and Kenya Rudzik's evident paralysis.

On May 16, 2013, a Star adjuster advised Rudziks' counsel that the policy limit was $1 million and that there was no excess coverage. He requested that Rudziks' counsel provide a medical record confirming

that Kenya Rudzik was paralyzed. Star did not initiate settlement discussions or make a settlement offer.

On May 17, 2013, Rudziks' counsel mailed a petition to the state district court in Grant County, naming TLC and Estrada as defendants. (He also sent Rudzik's medical records to Star). The petition was filed May 21, 2013, and was served on TLC and Estrada on July 22, 2013. Shortly thereafter a Star employee contacted Rudziks' counsel and asked if they intended to make a settlement demand. Rudziks' counsel declined to do so, saying it was the Rudziks' position that Star had breached its contract with TLC and had acted negligently or in bad faith. The Star employee did not make a settlement offer.

On October 23, 2013, an attorney representing Star contacted Rudziks' counsel and offered the policy limit of $1,000,000. The Rudziks declined the offer.

On or before September 29, 2014, the Rudziks entered into a "Glenn v. Fleming"[1] agreement with TLC and Estrada under which the latter two assigned all of their rights against Star Insurance to the Rudziks. The agreement asserted that Star breached its contract with TLC and engaged in negligence and bad faith. In exchange for this assignment of rights, the Rudziks promised to seek satisfaction of any judgment only from Star and not from TLC or Estrada. In the agreement, TLC and Estrada admitted that Estrada negligently caused the accident; that his negligence was imputed to TLC; that Rudzik was paralyzed as a result of the accident; that TLC had a policy with Star providing $1,000,000 in coverage; and that the Rudziks had incurred damages well

---

[1] See Glenn v. Fleming, 247 Kan. 296, 799 P.2d 79 (1990).

in excess of that amount. The parties agreed to waive jury trial and have the court determine fault and damages.

On September 29, 2014, the Hon. Bradley E. Ambrosier of the Grant County district court held a bench trial on the Rudziks' claims against TLC and Estrada.[2] Star Insurance was not a party and did not participate. On October 23, 2014, Judge Ambrosier entered a judgment finding Estrada 100% at fault and awarding the Rudziks damages against TLC and Estrada in the amount of $10,482,974.60, plus interest and costs.

On November 6, 2014, Star Insurance filed a complaint in this court against the Rudziks, TLC Trucking and Estrada. The complaint asked for a declaratory judgment that Star did not breach its insurance contract or act in bad faith, such that its liability was limited, at most, to the $1,000,000 policy limit. <u>Star Insurance Co. v. TLC Trucking, et al</u>., Case No. 14-1368 (D. Kan.). The complaint asserted subject matter jurisdiction by virtue of diversity of citizenship.

On December 1, 2014, the Rudziks (joined by TLC Trucking and Estrada) filed a petition in Grant County district court against Star Insurance, Custard Insurance Adjusters, and Donald Seward. The petition alleged that Star Insurance was liable for the $10.4 million judgment because it breached its contract with TLC and acted negligently and in bad faith. It similarly alleged that Custard and Seward "owed and undertook a duty to Insureds to properly investigate

---

[2] One of the signatures on the aforementioned settlement agreement was apparently witnessed by the district judge on the day of the bench trial.

-4-

and adjust the Rudziks' insurance claim, to act in Insureds best interest in doing so, and to timely and properly advise the Insurer of the need to provide insurance information and documentation to the Rudziks, to initiate settlement discussions and to offer the policy limits." Doc. 1-1 at 17. Custard and Seward allegedly "breached their contract with Insurer, breached their duty owed to Insureds, and acted negligently and in bad faith in investigating, adjusting and advising Insurer on the Rudzik claim" and thereby caused both the filing of the original suit against TLC and Estrada and the resulting $10.4 million judgment.

On December 19, 2014, Star removed the Grant County action to this court; this is the matter now before the court. (<u>Rudzik, et al. v. Star Insurance Co., et al</u>., Case No. 14-1421 (D. Kan.)). The notice of removal alleges that diversity jurisdiction exists even though Seward and the Rudziks are citizens of Kansas because "Seward has been fraudulently and improperly joined in this action for the sole purpose of destroying complete diversity in an attempt to defeat removal," such that his citizenship may be disregarded. Doc. 1 at 2.

**II. Motion to Remand (Doc. 16).**

Plaintiffs move to remand case number 14-1421 to state court, arguing diversity jurisdiction does not exist. They claim Star Insurance has not met its "heavy burden" to show that Seward was fraudulently joined to defeat diversity jurisdiction.

<u>Standards</u>. A case may generally be removed to federal court if it is one over which the federal courts have original jurisdiction. 28 U.S.C. § 1441(a). Original jurisdiction includes disputes between citizens of different states where the amount in controversy exceeds

$75,000. 28 U.S.C. § 1332(a)(1). For such diversity jurisdiction to exist, there must be complete diversity between the parties at the time of the filing of the complaint. See <u>Siloam Springs Hotel, LLC v. Century Sur. Co.</u>, ___F.3d ___, 2015 WL 1430335, *5 (10th Cir., Mar. 31, 2015). This means all parties on plaintiffs' side must be diverse from all parties on defendants' side. See <u>Dutcher v. Matheson</u>, 733 F.3d 980, 987 (10th Cir. 2013).

A defendant who is "fraudulently joined" need not be considered for the purposes of determining complete diversity. See <u>Smoot v. Chicago, Rock Island & Pac. R.R. Co.</u>, 378 F.2d 879, 882 (10th Cir. 1967) ("[F]ederal courts may look beyond the pleadings to determine if the joinder, although fair on its face, is a sham or fraudulent device to prevent removal."). To establish fraudulent joinder, the removing party must demonstrate either: 1) actual fraud in the pleading of jurisdictional facts (something Star does not claim); or 2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. <u>Dutcher</u>, 733 F.3d at 988. This is Star's claim.

In making a fraudulent joinder determination, the court is not required to take all allegations in the complaint at face value. Upon specific allegations of fraudulent joinder, the court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available. <u>Dodd v. Fawcett Publications, Inc.</u>, 329 F.2d 82, 85 (10th Cir. 1964). The objective of this inquiry is not to pre-try the merits of the claim, but to decide whether there is a reasonable basis to believe the plaintiff might succeed on at least one claim against the non-diverse defendant. See <u>Braznell v. Waite</u>,

-6-

525 Fed.Appx. 878 (10th Cir. 2013).

As plaintiffs point out, establishing fraudulent joinder is a heavy burden under which any factual issues or ambiguous legal questions must be resolved in a plaintiffs' favor. <u>Dutcher</u>, 733 F.3d at 988. To meet its burden, a defendant must "demonstrate that there is no possibility that [plaintiffs] would be able to establish a cause of action against [Seward] in state court." <u>See</u> <u>Montano v. Allstate Indemnity</u>, 211 F.3d 1278 (Table), 2000 WL 525592, *1 (Apr. 14, 2000). This standard is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6). <u>Montano</u>, 2000 WL 525592, *2. <u>See also</u> <u>Stillwell v. Allstate Ins. Co.</u>, 663 F.3d 1329, 1333 (11th Cir. 2011) (the plausibility standard of <u>Twombly</u> and <u>Iqbal</u> asks for more than a mere possibility that a defendant has acted unlawfully; by contrast all that is required to defeat a fraudulent joinder claim is a possibility of stating a valid cause of action).

### <u>Discussion</u>.

Plaintiffs TLC and Estrada contend they have properly pled claims against Seward for negligence and for third party beneficiary breach of contract. Doc. 16 at 4.

### <u>Negligence</u>

Turning first to the negligence claim against Seward, TLC and Estrada allege that Seward had a legal duty to them to properly investigate and adjust the Rudzik claim, that he breached those duties, that harm to them was a foreseeble result of failing to investigate and adjust with reasonable care, and that TLC and Estrada suffered damages as a result. TLC and Estrada acknowledge there are no Kansas cases recognizing such a claim. Nevertheless, they cite a

-7-

few cases from other jurisdictions that allow negligence claims against independent adjusters and argue that general principles of Kansas negligence law should allow a claim against Seward.

The chances of survival of TLC and Estrada's negligence claim against Seward are not good, given the Kansas Supreme Court's emphatic rejection of a tort remedy for bad faith (including negligent) handling of claims by an insurer, and its insistence that such claims arise not from obligations imposed by law but from an insurer's express and implied obligations under an insurance contract. See Glenn v. Fleming, 247 Kan. 296, 313, 799 P.2d 79 (1980); Guarantee Abstract & Title Co., Inc. v. Interstate Fire and Cas. Co., Inc., 232 Kan. 76, 652 P.2d 665 (1982) ("a claim that an insurer acted negligently in performing its contractual duty to defend on behalf of the insured does not create a tort action"); Aves by and through Aves v. Shaw, 258 Kan. 506, 512, 906 P.2d 642 (1995) ("a plaintiff who seeks damages from an insurer under a third-party bad faith action must bring the action as a contract claim."). Moreover, the majority view among other states is that no negligence claim lies against an independent adjuster in these circumstances. See e.g., Trinity Baptist Church v. Brotherhood Mut. Ins. Svcs., LLC, 341 P.3d 75 (Okla. 2014) ("A majority of courts in other states have held that an insured cannot maintain a separate tort action for negligence against an independent insurance adjuster hired by the insurer because the independent adjuster owed the insured no duty of care."). See also Thomas R. Malia, Liability of Independent or Public Insurance Adjuster to Insured for Conduct in Adjusting Claim, 50 A.L.R. 900 (1986).

## Breach of Contract

On the breach of contract claim, TLC and Estrada contend that they were intended beneficiaries of a contract for adjusting services between Star and "Custard/Seward," such that they have standing to sue for breach of that contract. They acknowledge there are no Kansas cases allowing such a claim on these facts, but they point out that Kansas generally recognizes third-party beneficiary claims, and they say they have properly alleged all the elements of a claim. They argue Judge Crow's rejection of a bad faith claim against an independent adjusting company in Wolverton v. Bullock, 35 F.Supp.2d 1278 (D. Kan. 1998) is distinguishable because the plaintiff in that case did not claim to be a third party beneficiary of the adjusting contract, and also because that case was not decided under fraudulent joinder standards.

The breach of contract claim is doubly doubtful, resting not only on an unexplained allegation that Custard employee Seward somehow personally bound himself on a contract with Star for adjusting services, but also resting on the application of a third party beneficiary theory with no support in Kansas case law and contrary to the prevailing view elsewhere. See Restatement (Second) of Agency §320 ("Unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract."); 3 Couch on Insurance §48:64 (3rd ed. 2012) ("An insured is not a third-party beneficiary to a contract between an insurer and an independent insurance adjuster hired by the insurer to investigate a loss....").

-9-

Conclusion

Despite the dim prospects of success on these claims, the court concludes that Star has not met its heavy burden of establishing fraudulent joinder. First, insofar as the parties' dispute presents a legal issue, neither the Kansas Supreme Court nor any lower Kansas court has specifically addressed a third-party beneficiary contract claim or a negligence claim against an independent adjuster hired by an insurer. There is one federal decision on similar facts, Wolverton v. Bullock, 35 F.Supp.2d 1278 (D. Kan. 1998), but as TLC and Estrada point out, no third-party beneficiary contract claim was made in that case. Moreover, whether or not a claim can be asserted against an independent adjuster is ultimately one of state law on which the Kansas courts have not yet ruled. Additionally, even though a majority of decisions in other states find that no claim lies against an independent adjuster for negligence or for breach of contract under a third-party beneficiary theory, there are at least a few jurisdictions where such claims have been recognized. Given the absence of a controlling Kansas decision, the court cannot say there is no possibility that Kansas would recognize such a claim, even if the current posture of Kansas law suggests the chance is remote.

The absence of controlling Kansas case law on these claims refutes Star's contention that Seward's joinder could only have been for the purpose of defeating diversity jurisdiction. It may well be that a court applying Kansas law will ultimately find that plaintiffs have no claim for relief against Seward. But that is not the question presented here. See Dutcher v. Matheson, 733 F.3d 980, 989 (10th Cir. 2013) (failure to show fraudulent joinder does not mean that

plaintiffs have stated a valid claim); Montano, 2000 WL 525592 at *2 (standard for fraudulent joinder is more exacting than that for dismissing a claim under Rule 12(b)(6)). "A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction." Id. (citing Batoff v. State Farm Ins. Co., 977 F.2d 848, 851-53 (3rd Cir. 1992)). Because Kansas courts have not specifically addressed whether an insured can recover against an independent adjuster in these circumstances, and rulings from other states give plaintiffs at least a good faith basis for arguing that Kansas law should be construed to allow such claims, there remains uncertainty in Kansas law on which plaintiffs are entitled to the benefit of the doubt insofar as fraudulent joinder is concerned. This entails the kind of merits determination that should be left to the state court where the action was commenced.

Second, from a purely practical standpoint, the lack of discovery presents a problem. Federal courts are courts of limited jurisdiction. The court declines to keep the case while the parties conduct discovery when subject matter jurisdiction is in question. Not only will this be contrary to Fed. R. Civ. P. 1, it will present potential appellate issues as well. None of these stumbling blocks are present in the state court.

The court finds that complete diversity among the parties does not exist and that case number 14-1421 must be remanded to state court.

**III. Conclusion.**

Plaintiffs' Motion to Remand (Doc. 16) is granted. The action is hereby forthwith remanded to the District Court of Grant County, Kansas.

The court finds that each party should bear its own costs and expenses and that no fees should be awarded in connection with the removal or remand. See 28 U.S.C. § 1447(c).

The court is without jurisdiction to rule on the remaining motions in the case.

IT IS SO ORDERED.

Dated this 28th day of April 2015, at Wichita, Kansas.

s/Monti Belot

Monti L. Belot

UNITED STATES DISTRICT JUDGE